Good morning. Good morning. May it please the Court, my name is R. Wayne McMillan. I represent Mr. Eriza Flores. The issue in this case is whether Mr. Flores is shoreboard from presenting or having his motion to reconsider or motion to reopen ruled on by the Court because he overstayed a grant of voluntary departure. I think it would be helpful to go over a timeline. On April 17, 2002, the Board denied Mr. Eriza's appeal from the denial of his cancellation of removal case and gave him 30 days' voluntary departure. On May 16, 2002, within the 30-day period, a petition for review was filed with this Court. And in that petition for review, he affirmatively requested a stay of removal. And subsequently, that stay of removal was granted by this Court with no objection from the government. The law in effect at that time was the Contreras-Aragon case, which held that the Court's ruling that a petition for review automatically stayed everything, including voluntary departure. On July 16, within the 90-day period, the Respondent filed a motion to reopen alleging newly discovered evidence, number one, that his newborn son was suffering diagnosis of suffering from a congenital heart defect, and number two, he had been subsequently diagnosed by an orthopedic that he had suffered a work injury and was no longer able to do the manual labor that he was trained for. I think it was masonry work and, therefore, would not be employable. The argument would be he would not be employable in his native country of Mexico. The Court in July of 2004 remanded this to the Board for reconsideration in light of this Court's decision in Zuzueca v. Carrillo, 2003. The Board, in my opinion, seemed to ignore that decision on this Reddit and also did not address two other circuit decisions in effect at that time, the L. Henry case and the Vesta case. The Board didn't address those at all. Yeah. Counsel. Yes. Counsel said you will have a question for you. Yeah. And I sympathize with complexities here because it seems like the law keeps changing, you know, from Contreras to Zuzueca, then Vesta. But applying Vesta, if it applies to his circumstances, would his voluntary departure period then be stayed only up until the mandate issued on August 5 on his prior appeal, prior petition, so that his voluntary departure, though it would have been stayed under Vesta. It's not stayed indefinitely. It would be stayed until August 5, 2004. Is that correct? And if so, does the record tell us if he departed before that date or whether we're in a situation where if we remand to the Board and it finds out that he overstayed after August 5, it won't be able to do anything anyway. And refresh my memory. The August 5 date, 04, what happened on that date? Mandate. Or mandate. Mandate. At that particular point, the case would be remanded to the Board. The grant of voluntary departure was no longer relevant because there was no final order of removal any further. At that point, the case was back before the Board to decide whether or not it should be remanded to the IJ. I don't think that voluntary departure was particularly relevant at that point because at that point, there was no final order of removal any further. Can you say in light of in light of the prior remand to the Board that he was no longer subject to an order of voluntary? He was no longer subject to an order of removal. There was no final order of removal. So so voluntary departure at that point would not be relevant to the posture of the case at that time. Thank you. What did we say in our mandate? I don't. I don't have I have. You say that there's no final order of removal. Had he not conceded removability and there was a removal order and then he was seeking to have a change in classification because of the hardship. He was he was asking that the case reopened that the Board reopened his case to present additional evidence. I think at that point, his removal would continue to be stayed. Under what authority? Well, a case pending before the Board, removal is stayed, automatically stayed when a case is pending before the Board. But we denied relief. Isn't that correct? You denied relief based upon the discretionary aspect of the case. Bear in mind, at that time, two petitions had been combined. His first petition, which was based upon the denial of the cancellation removal, we had filed a petition for review from the second denial of the Board that denied his first motion to reopen. The first motion to reopen was denied based on a question of law, that is, that he was shore board. And we filed a petition for review for that, and those two were combined under the incident case. So you did remand it to determine if he was in fact shore board based upon your holding in Zuzueka. I don't believe he would have overstayed any grant or voluntary departure while his case was pending before the Board. That would create a bizarre circumstance where the Respondent was getting some type of relief. He was getting this Court to say, you know, Board, maybe you've messed up here because you weren't aware of this case, and why don't you re-decide it based upon this case. And the Respondent being under some obligation to at that point leave the country. I think that he would be getting some benefit by this Court's decision. Now, there's a brand new case, Dada, from the Supreme Court. Have you looked at that? I have not. I'm somewhat familiar with it, but I've not had a chance to look at it. I apologize. It would seem, does he still have pending requests for voluntary departure? If he did, he could dismiss that, and then the Board would be required to make a determination on his motion to reopen. Well, if I. I'm just kind of trying to figure out what's going on here. I did get some thoughts of that. And arguably there's regulations now. And arguably when he made his first motion to reopen to the Board, if we extended that all the way to the Dada case and to the regulation, he is, the Board at that point should have done away or automatically done away with his voluntary departure status. That seems to be what the Dada case and new regulations did. So if that was retroactive, then we don't have a voluntary departure overstay at all. He doesn't. He wasn't ordered to. That certainly was. In the Dada remand, that was the option they said had to be given. And you could withdraw your voluntary departure petition in light of data. And that would take away the. That's right. And the bar, if you fail to depart. Yes. And that option has not been given. In my way of thinking. And I thought in Dada they said you have that option, provided that the request for withdrawal is made before the time runs. Of course, the time in order to run, except for the study, the time in order to run by the time the whole Dada issue came about. This case is began in 1990, 2002. And I'd just like to say one thing that my client throughout the pendency of all of this has relied on statutory law that was in existence at that time. He did a very good job of it, too. I mean, he did, which is amazing. At any rate, he did a very good job of that. And each change in the law that came along would seem to have benefited me. And I'm having a hard time figuring out why, then, he should be shoreboard after every subsequent decision seems to fall right into his circumstance and seems to have benefited his situation. Yet we can still argue that he's overstayed his ground of voluntary departure and he's not shoreboard. There's nothing subsequent that has come up that would put him in a bad situation. Okay. Well, why don't we give you a few seconds after for any rebuttal. We'll hear from the governor. Good morning, Your Honors. Anna Nelson for Respondent, Attorney General. Flores' application for cancellation of removal was denied in 2000. The board and this court upheld the denial of the discretionary relief. What's still being litigated nine years later is this issue of voluntary departure. Right. And contrary to what opposing counsel said, it's not that he was shoreboard. It's that his statute totally barred at the time the board denied his motion to reopen, finding him ineligible for the relief that he had already been denied. Voluntary departure is a discretionary form of relief. Congress enacted it to give benefit both to the alien and to the government, to give the government a way of efficiently and economically coming up with a solution to removal proceedings when an alien has been found removable, as Flores was. He was advised of the consequences before both IJ advised him of the consequences of not failing to depart, and then the board did again when they extended the voluntary departure period by 30 days. He didn't depart at that time. And at that time, there was nothing in the law, the statutory law, that would have suggested that his petition for review or his motion for a stay of removal would have told the voluntary departure period. Now, our mandate, I guess, went down on this August date. He still had the matter pending before the board. And counsel says there's an automatic stay until the board acts. Is that correct? This motion to reopen would have stated, if he had filed a motion to reopen within the voluntary departure period? He did. Did he not? It was after the voluntary departure period expired that he filed his motion to reopen. The only thing that he had done was filed a petition for review and the motion for a stay of removal with this Court. However, at that time, there was no statutory law that would have suggested that that told his period. He didn't request a stay of voluntary departure, so the Court can't grant that. So really, although he's arguing now that DESTA and cases that came subsequent to the board's decision would have told his period, there was actually no reason for the board to have found that in 2002. And they found him statutorily ineligible for relief. Okay, but then in DESTA, in DESTA, when our Court said, if I'm understanding it right, that a request for stay of removal means there's a, if that's granted, that there's an implied stay of voluntary departure. I don't see why that wouldn't apply to this case, even if, you know, even if it came down after he was before the board. Because when it gets back to us, we apply cases like DESTA as if they were always the law, I think. And maybe I'm missing something. I'm not kidding why we shouldn't just remand to the BIA on the theory that the BIA made a mistake in its reasoning that his departure was not stayed because the BIA did not address DESTA. I think the problem there is that this Court is reviewing the board's decision for abuse of discretion, and it's hard to come up with that the board abused its discretion in 2002, making the decision it did when DESTA was decided in 2004. And this Court did remand the case to the board in 2005 after DESTA, and this Court upheld the cancellation of removal application decision and advised the board to consider, to reconsider its decision and cited Zazueta. So the board did that. This Court didn't mention DESTA, didn't suggest that it should retroactively consider DESTA when reconsidering its 2002 decision. And so the board, on remand, in its June 13, 2005 decision, stated, took into consideration Zazueta, found that the voluntary... Oh, wait a minute. Wait, wait. Time out. Time out. Wait a minute. OK, so. For this case was when did our opinion come out? That was on... submitted on February 17. Decided in August. July, yeah. It was the August date. I don't know. This circuit doesn't make it... Oh, here we go. Decided July 28. OK. And DESTA was decided April 14. So it was on the books. And as you say, our MEMDISPO did not cite, cited Zazueta, right? Right. But even if our MEMDISPO did not cite DESTA, isn't the board obligated, when it makes that reconsideration, to consider circuit precedent like DESTA, whether we've mentioned it or not? I believe, yes, if it was really controlling in this case, it would be required to. I think, and I don't know what the board's thought was, but they did rely on Zazueta, which stated that the voluntary departure period began immediately after the agency's determination. Right. I think I know what Zazueta said because I wrote that one. But that doesn't really address whether the voluntary departure was stayed. You know, the subject of DESTA. And I, if the board is reconsidering its 2002 decision, it was reasonable not to, not to believe it had retroactively applied DESTA. Also, DESTA was a bit different than this case. In DESTA, the court used its equitable jurisdiction to constitute a stay of removal, also as a stay of voluntary departure. And the court explains in there that it really served the purpose of asylum law, that DESTA was litigating an asylum claim, feared going back to Ethiopia. The board was having trouble with holding this person to their voluntary departure obligations, which meant going back to a country where they feared persecution. In this case, Flores had one day left in his voluntary departure period. He filed a petition for review. He wasn't barred from, or the court wasn't barred from still reviewing the petition for review. Even if he would have gone back to Mexico, he could have gone back and waited, which is what voluntary departure statute is, what it was directed to happen. Well, now, if this fellow went back to Mexico, just automatically his request to reopen is gone. Isn't that right? His motion to reopen, he would have been barred from it at that time. The court still could have entertained the petition for review. But his motion to reopen would have been barred had he left. But he's, if we, we can't say he's got to go back and still has any relief available to him. That's clear. And in this case, he really doesn't have any relief available to him. I mean, the board and this court decided it's really just a matter of did he voluntarily depart? Was it extended one day? Tell us what DADA suggests we do. Right. And DADA doesn't directly apply to this. In DADA, the Supreme Court stated that they're not reaching the issue of whether a petition for review would cause voluntary departure, period, to expire. They're not reaching the petition for review part of it. They do state that based on statutory design, it wouldn't make sense for the filing of a motion to reopen to toll a voluntary departure period. So that's why they gave a person an option to withdraw that. And then, therefore, the statutory consequences won't apply.  But their policy analysis behind it, that it doesn't make sense to let an alien continually file motions to reopen, petitions for review, just to keep extending this grant of voluntary departure, which is supposed to be a benefit to them. Does the record tell us where Zazuitu, I mean, where Orisa Flores is now? Still in the U.S. or gone back to Mexico? But don't tell me if it's not in the record. Yeah, I'm not sure. It's not in the record. Okay. Thank you. Thank you. I'll respond across that. Does the petition be dismissed? A few points, if you don't have questions for me. It would seem very strange that Mr. Orisa not benefit by DESTA. If he doesn't benefit for him, then for it. And how does DESTA benefit? It would seem to me that the facts of the case are identical. And how is it that because Mr. DESTA beat Mr. Orisa to the courthouse, that Mr. DESTA benefits, but Mr. Orisa does not? I think any clarification by this Court of the law should apply to everyone who fits within that situation. Furthermore, the Board, in reviewing after remand, was aware of Judge Mazan's concurrent opinion, where she stated that she thought the Board should have, the Court should have made a ruling that any grant of stay of removal that is granted should also be considered to be a stay of voluntary departure. Both DESTA and Al-Himri were decided before the Board's decision in the remand case. The Board just totally ignored that. It seems to me that my client should benefit from all of these changes of the law. He's done everything he was supposed to do. And I don't think that we should exercise in some type of a gotcha situation to say that at such and such a time in 2005, the clock ticked over to the next day and you've lost out. I don't think that's that would be appropriate. Well, I have to say, I have some trouble going back and looking at both of the prior opinions here. We don't cite Troublesome. We don't cite DESTA. But on the other hand, the BIA cites Azarte. And it takes a look at Azarte, which is a 2005 case, which is even more recent than DESTA. So, OK. Thank you, counsel. The case argued is submitted. Judge Gould, should we take one more case and then a break? Or that was so we can take a break. Take a 10 minute break. Take it. I would appreciate.
judges: B. Fletcher, Fisher, Gould